UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-61902-CIV-COHN/Seltzer

MAX GOLDWEBER,

      Plaintiff,

vs.

HARMONY PARTNERS, LTD. et al,

      Defendants.
_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants' Motion Summary Judgment [DE 58] ("Motion"), Plaintiff's Memorandum in Opposition [DE 66] ("Response"), and Defendants' Reply thereto [DE 68]. The Court has carefully considered the Motion, Response and Reply, and is otherwise fully advised in the record.

### I.  BACKGROUND

Plaintiff Max Goldweber ("Plaintiff") filed this action against related entities Harmony Partners, Ltd., Harmony Services, Inc., and Harmony Services, LLC (collectively "Harmony"), as well as individuals Harold Altman, Lawrence I. Altman, and Barry S. Altman, for breach of contract, breach of fiduciary duty and negligent misrepresentation. The action was originally filed in state court in New York, removed to the United States District Court for the Eastern District of New York, and then transferred to the Southern District of Florida.

Plaintiff was a limited partner in Harmony Partners, Ltd., formed in 1993 to pool the contributions of its partners for investment purposes. Harmony Partners had two

general partners, Defendant Harold Altman and Harmony Services, Inc.  The latter entity had three officers and directors:  Harold Altman, Defendant Barry Altman and Defendant Lawrence Altman.  In December of 2003, Harmony Services, Inc. was succeeded by Harmony Services, LLC, which had Harold Altman as its sole officer-director and 92% owner, and two non-party grandchildren as 8% owners [DE 58-10].

The key document underpinning this dispute is the January 13, 1993 Private Placement Memorandum ("PPM") that was part of the prospectus distributed to all investors in Harmony.  The PPM disclosed that the general partners had no experience in managing an investment entity and that they would search for a "well reputed full service securities firm (broker) capable of providing research and securities analysis as well as purchase, sale and trading recommendations.  Such broker may be given discretionary authority to manage the Partnership trading."  PPM at pp. 6-8, Exhibit 2 to Motion [DE 58-2].  The PPM also stated that the Partnership's equity investment in stocks will "be widely diversified both as to industry and the number of issuers.  Stock selection methods will be based in part upon variables which are believed to relate to the future market performance of a stock, such as recent changes in earnings per share and their deviations from analysts' expectations, past growth trends, historical price movements of the stock itself, publicly reported trading transactions by corporate insiders, and price earnings ratio."  Id. at p. 12.

Harmony chose Bernard Madoff's firm, Bernard Madoff Investment Securities ("BMIS"), as the broker to handle all of Harmony's money.  Harold Altman received an "Incentive Fee" for maintaining the records and reports of the partnership.  Plaintiff alleges that Defendants had already selected BMIS at the time of the issuance of the

PPM, and therefore the statement regarding a search for a reputable firm was a misrepresentation or a breach of contract.  Harold Altman testified that he did not select Madoff until March of 1993.  Deposition of Harold Altman at 74 [DE 58-12].  While he did testify that he provided the PPM to Mr. Madoff to have it reviewed by his lawyers, whether that was done in January or March of 1993 is not clear.  Id.  There is no evidence to dispute the statement that the selection was not final until March.  As for notice to investors of the selection, Harold Altman testified that this information had been transmitted verbally to the limited partners.  Altman Deposition at 63.  It was not until November 27, 2002, that an Amendment and Supplement to the 1993 PPM was created stating that BMIS and Madoff were the brokers for the partnership [DE 58-8].  Defendants have no record of Mr. Goldweber's receipt of this information, and Plaintiff testified that he never heard of Madoff until November of 2008 when Altman called him to say their investments were gone.  Altman Deposition at 64; Deposition of Max Goldweber at 12 [DE 62-1].

      Defendants also provide documentation that Plaintiff had already invested his initial $20,000 with Harmony on January 7, 1993, before he received the PPM and related prospectus materials that he claims were breached.  January 7, 1993 Letter to Harmony Services [DE 58-6].  Pursuant to Plaintiff's request in his letter, Harmony sent the materials to him on January 21, 1993 [DE 58-7].  The record shows that on March 9, 1993, Plaintiff completed the client questionnaire and subscription agreement requested by Harmony [DE 58-4 and 58-5].  Thus, despite Plaintiff's contention that Altman somehow admitted that he "circulated the outdated Prospectus to Goldweber and other limited partners even after unequivocally selected Madoff in March, 1993,"

3

the record only shows that Altman sent the PPM to **other** investors (not Plaintiff) after the selection, but that as of the date of the PPM, January 13, 1993, there is no support for the argument that Madoff had already been selected.  See Plaintiff's Memorandum in Opposition to Defendant's Motion at 4; Altman Deposition at 31-32.

The record is also clear that Plaintiff knowingly placed his money with Harold Altman, despite Altman's disclosed lack of investment experience or expertise, because the prior investment relationship between them had resulted in Plaintiff receiving his money back.  In fact, for fifteen years, the investment with Harmony (and thus Madoff) appeared to be successful.[1]  Harmony and its 98 limited partners received statements from and had redemptions processed by Madoff's firm.  Harmony's general partners, with the aid of accountants, reviewed the statements received from BMIS, and calculated the values to be attributed to the accounts of each of the limited partners, including Plaintiff.  Trade Tickets and Monthly Statement [DE 58-11].  Quarterly reports were disseminated to the limited partners.  All requests for withdrawals were accepted and complied with by BMIS.  Plaintiff testified that he does not remember seeing any trade tickets or confirmations, but nor did he request to see Harmony's records.  Deposition of Max Goldweber at 63-64.  In November of 2008, Harold Altman learned that Madoff has confessed to a Ponzi Scheme and that there would be no further redemptions of the Partnership funds.  All remaining 98 limited partners lost their entire

---

[1] Plaintiff alleges in the Response that Altman's statement that the investments with Madoff were not a disaster but were a success demonstrates a triable issue of disputed fact.  Response at 6.  However, when placed in context, the actual statements by Altman show only that during the time of the investment, all participants believed Madoff's investments were a success.  Altman Deposition at 51 ("Q: Was Mr. Madoff a success?  A: Absolutely") (emphasis added).

investment as it existed at the end of November, 2008.  Plaintiff testified that he has no knowledge that Harmony or Harold Altman knew that Madoff was operating a Ponzi scheme.  Id. at 84.[2]

Following a period of discovery, Defendants have moved for summary judgment on various grounds.  Plaintiff opposes the motion.

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v.

---

[2]  There is no evidence at all that Defendants Lawrence Altman and Barry Altman had any contact with Plaintiff or made any decisions involving Harmony or the funds placed with Harmony.

Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of  Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  Anderson, 477 U.S. at 249-50.

### B.  Standing

Defendants' first argument is that Plaintiff lacks standing to bring a direct, individual action against Harmony Partners.  Defendants contend that Plaintiff can only bring a derivative action on behalf of all limited partners, as the harm to each limited partner was the same.  In Florida, the gravamen test is used to distinguish between direct and derivative claims.  Hantz v. Belyew, 194 Fed. App'x. 897, 900 (11th Cir. 2006), citing Citizens Nat'l Bank v. Peters, 175 So.2d 54, 56 (Fla. Dist. Ct. App. 1965).  "Under the gravamen test, 'a stockholder may bring a suit in his own right to redress an injury sustained directly by him, and which is separate and distinct from that sustained

by other stockholders.' If, however, the injury is *primarily* against the corporation, or the stockholders generally, then the cause of action is in the corporation and the individual's right to bring it is derived from the corporation.'" Hantz, 194 Fed. App'x at 900, quoting Citizens Nat'l Bank, 175 So.2d at 56 (emphasis added); see also Alario v. Miller, 354 So.2d 925, 926 (Fla. Dist. Ct. App.1978).[3]

Plaintiff argues that Defendants breached the PPM/Prospectus, a contract directly between Plaintiff and Defendants. Plaintiff cites only to Jones v. Childers, 18 F.3d 899 (11th Cir. 1999), which does not discuss or involve this standing argument. Plaintiff contends that the breaches were made directly against Plaintiff, whether by failing to properly invest the funds or by breaching the personal fiduciary relationship. If Plaintiff was suing Harmony for Madoff's wrongs done to Harmony, than Defendants would be correct that Plaintiff lacks standing. Rather, as Plaintiff contends, the breach and/or misrepresentations about the nature of the investments were committed by Defendants directly against Plaintiff.

Nonetheless, as noted in Defendants' reply, if one follows the case law that a court should only look at the harm or injury, rather than the breach, then Defendants are correct that the harm to Plaintiff, i.e., loss of investment funds, is the same harm as that to all other limited partners. Plaintiff's standing in this action is therefore suspect. If this were the only issue in this case, the Court would conclude that Plaintiff lacks

---

[3] Defendants also cite to Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc., 140 F.3d 898, 906 (11th Cir. 1998) ("losses suffered by a company's stakeholders as a result of racketeering activity against the company do not give them standing under RICO"). This decision in a federal statutory case is not helpful to the diversity action present in the case at bar.

standing to sue directly.  Because the Court also concludes that Defendants are entitled to summary judgment on the merits, the Court will assume Plaintiff does have standing to bring direct claims, and proceed to decide this action on its merits.

### C.  Breach of Contract

Under Florida law, the elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach.  Rollins, Inc. v. Butland, 951 So.2d 860, 876 (Fla. Dist. Ct. App. 2006).  It is clear that the parties had a contract, the PPM, subscription agreement and related investment disclosures, and that Plaintiff suffered damages from the loss of the investments. Plaintiff alleges that Defendants breached the contract because they deviated from the plan of investment as stated in the PPM/Prospectus by placing all funds with the Madoff firm and not maintaining a diversified portfolio.  Plaintiff contends that there are disputed issues of material fact because Harold Altman testified in his deposition that that he failed to direct investments based upon the language in the PPM.

On the issue of choosing the Madoff firm, it is clear that the PPM disclosed that the general partners had no experience in managing an investment entity and that they would search for a "well reputed full service securities firm (broker) capable of providing research and securities analysis as well as purchase, sale and trading recommendations.  Such broker may be given discretionary authority to manage the Partnership trading."  The record shows that Plaintiff agreed with the offering documents and signed a subscription agreement.  There is no dispute that Harmony

chose Madoff as the broker and gave him the agreed upon discretionary authority. This decision was not made until March of 1993, two months after the issuance of the PPM.[4] Plaintiff had access to trading documentation but did not request to see the documents. In 1993, and for many years thereafter, Madoff was a well reputed full service broker. The Court therefore concludes that there are no genuine issues of disputed fact on the issue of selection of a broker.

On the issue of the alleged lack of diversification, the PPM includes two full pages of various risk factors warning of the speculative nature of the investments. PPM at pp. 8-9. On its very first page, the PPM contains a bold warning that these securities "INVOLVE A HIGH DEGREE OF RISK AND SUBSTANTIAL DILUTION TO PUBLIC INVESTORS. THEY SHOULD BE PURCHASED ONLY PERSONS WHO CAN AFFORD THE RISK OF LOSS OF THEIR INVESTMENT." PPM at 1. The Court must read the PPM document, the parties' contract, as a whole. <u>Beach Street Bikes, Inc. v. Bourgett's Bike Works, Inc.</u>, 900 So.2d 697, 700 (Fla. Dist. Ct. App. 2005). When read as a whole, the Court concludes that there are no genuine issues of disputed fact, and that Plaintiff has failed to meet his burden to show a breach of contract.[5]

### D.  Breach of Fiduciary Duty

Plaintiff's second cause of action is for breach of fiduciary duty. The "elements

---

[4] Plaintiff is not suing on behalf of other investors who sent in their funds for investment after the selection of Madoff.

[5] There is no evidence at all that Barry Altman or Lawrence Altman had any personal involvement with Plaintiff. Summary Judgment would be appropriate in their favor on this additional ground.

of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the Plaintiff's damage." Gracey v. Eaker, 837 So.2d 348, 353 (Fla. 2002). These duties have been found in the context of a mental health therapist and patient, physician and patient, corporate officer to corporation, or a bank disclosing sensitive documents to a third party. Id. In Lanz v. Resolution Trust Corp., 764 F.Supp. 176, 179 (S.D.Fla. 1991), the court concluded that absent evidence that a creditor recognized, accepted or undertook the duties of a fiduciary, such a relationship would not be presumed.

It is not clear that a fiduciary relationship has been shown by Plaintiff, but because the PPM and offering documents suggest that Harmony Partners undertook such a role, the Court will assume the existence of a fiduciary duty. However, as with the breach of contract analysis above, Plaintiff has not shown a breach of that duty. Even if Plaintiff had shown a breach, Plaintiff's damages were caused by Madoff's Ponzi scheme, not by Defendants. There is no evidence that Defendants knew of the scheme, nor that Defendants' actions (or inactions) proximately caused Plaintiff's damages.

### E.  Negligent Misrepresentation

Plaintiff's third cause of action is that Defendants misrepresented the nature of the investments. Under Florida law, a suit for negligent misrepresentation must contain the following elements: (1) misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the representation without knowledge as to its truth or falsity, or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must

intend that the representation induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation. Atlantic Nat. Bank of Florida v. Vest, 480 So. 2d 1328, 1331-32 (Fla. Dist. Ct. App. 1985), *rev. denied*, 491 So. 2d 281 (Fla. 1986) and 508 So. 2d 16 (Fla. 1987).

Plaintiff may be making two separate claims of misrepresentations. The claim that is clearly made in the complaint is that the funds were supposed to be invested in a diversified portfolio. Complaint, ¶ 43 [DE 1]. The second claim of negligent misrepresentation appears to be the timing of the selection of Madoff as the broker. Defendants argue that these claims are barred by the economic loss doctrine. In Florida, the economic loss rule represents the proposition that "[i]n the absence of personal injury or property damage, a party is generally not entitled to initiate an action in tort to recover an economic loss." Sarkis v. Pafford Oil Co., Inc., 697 So. 2d 524, 527 (Fla. Dist. Ct. App. 1997) (citing Casa Clara Condominium Assoc., Inc. v. Charley Toppino & Sons, Inc., 620 So. 2d 1244 (Fla. 1993)). "This rule is based on the premise that parties to a contractual relationship have allocated their respective rights and remedies and consequently it is inappropriate to introduce tort remedies." Id.

In this instance, the tort claim of misrepresentation is exactly the same as the claim for breach of contractual obligations. There is no evidence of any representations made outside of the contractual documents, nor any made to induce the making of the contract. Thus, these claims are barred by the economic loss rule. To the extent they are not barred, as with the Court's conclusion regarding the breach of contract, when all the statements of the PPM are read as a whole, Plaintiff has failed to meet his burden to show that Defendants made a negligent misrepresentation, and have failed to show

any genuine issues of disputed material facts.

## III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion Summary Judgment [DE 58] is hereby **GRANTED**;

2. The Court shall separately file a summary judgment in favor of Defendants;

3. This case is removed from the Calendar and the Clerk may close this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 16th day of September, 2010.

_____
JAMES I. COHN
United States District Judge

copies to counsel on CM/ECF