UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-61902-CIV-COHN/Seltzer

MAX GOLDWEBER,

    Plaintiff,

vs.

HARMONY PARTNERS, LTD. et al,

    Defendants.

_____/

## ORDER DENYING MOTION FOR RECONSIDERATION

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Reconsideration [DE 73] ("Motion"), Defendants' Response to the Motion [DE 87] ("Response"), and Plaintiff's Sur Reply in Support of its Motion ("Reply") [DE 90].[1]  The Court has carefully considered the Motion, Response and Reply, and is otherwise fully advised in the record.  The motion became ripe on February 14, 2011.

### I.  BACKGROUND

Plaintiff Max Goldweber ("Plaintiff") filed this action against related entities Harmony Partners, Ltd., Harmony Services, Inc., and Harmony Services, LLC, as well as individuals Harold Altman, Lawrence I. Altman, and Barry S. Altman (collectively "Defendants"), for breach of contract, breach of fiduciary duty and negligent misrepresentation.  After a period of discovery, the Court entered a final summary judgment in favor of Defendants on all claims [DE 71].  Plaintiff moves for

---

[1] Despite its title, Plaintiff filed a reply, not a sur reply.

reconsideration of the Court's order granting summary judgment. For purposes of this Order, the Court hereby incorporates by reference the "Background" section of the Order Granting Motion Summary Judgment. DE 71, pp. 1-5.

## II. ANALYSIS

### A. Motion for Reconsideration Standard

There are three grounds which justify the filing of a motion for reconsideration: "1) an intervening change in controlling law; 2) the availability of new evidence; and 3) the need to correct clear error or prevent manifest injustice." Williams v. Cruise Ships Catering & Serv. Int'l, N.V., 320 F. Supp. 2d 1347, 1357-58 (S.D. Fla. 2004); Reyher v. Equitable Life Assurance. Soc., 900 F. Supp. 428, 430 (M.D. Fla. 1995). A motion for reconsideration is not intended to be a tool for relitigating what a court has already decided. Reyher, 900 F. Supp. at 430. Rather, it "must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Id. (internal quotations omitted). Plaintiff contends that the Court made clear factual errors in its prior ruling. The Court disagrees.

### B. Standing

Plaintiff seeks reconsideration on the Court's conclusion that standing in this case was "suspect." The Court concluded that under Florida law, the gravamen test, in which one looks to whether the harm or injury was sustained by the individual or by all other stockholders, led to the conclusion that the harm to Plaintiff, i.e., loss of

investment funds, is the same harm sustained by all other limited partners.  See Order Granting Motion for Summary Judgment at 7 [DE 71]; Hantz v. Belyew, 194 Fed. App'x 897, 900 (11th Cir. 2006) (citing Citizens Nat'l Bank v. Peters, 175 So. 2d 54, 56 (Fla. Dist. Ct. App. 1965)).  In his motion for reconsideration, Plaintiff ignores Florida law and cites to an arbitration decision and an opinion of the United States Court of Appeals for the Second Circuit.  The Court therefore makes clear in this order that Plaintiff does not have standing to bring direct individual claims, based upon the analysis contained in the Order Granting Motion for Summary Judgment.[2]

### C.  Breach of Contract/Breach of Fiduciary Duty

Plaintiff makes several arguments that the Court "erred in its factual findings" in granting Defendants' Motion for Summary Judgment.  Though Plaintiff essentially is relitigating arguments made in opposition to Defendants' original motion, the Court will address some of the arguments.

#### 1.  Timing of Selection of Bernard Madoff Investments as Broker

Plaintiff argues that whether the Defendants breached their contract and/or made negligent misrepresentations regarding the selection of Bernard Madoff Investments ("BMI") as broker prior to Plaintiff signing the subscription agreement is a

---

[2] The Court had previously found Plaintiff's standing "suspect," and therefore assumed standing for purposes of reaching the merits of the summary judgment motion.  For purposes of any appeal in this case, the Court therefore makes clear in this Order that Plaintiff does not have individual standing under Florida law to assert these derivative claims.

disputed issue of fact that must be decided by a jury.  The Court previously concluded that regardless of the date a draft of the Private Placement Memorandum ("PPM") was sent to BMI, there was no admissible evidence to dispute the fact that the selection of BMI was not final until March of 1993, and that Plaintiff had sent his $20,000 investment to Defendants in January of 1993 (though Plaintiff did not sign the subscription agreement until March 9, 1993).   Although with hindsight it sounds preposterous to conclude that the selection of Madoff was not material to Plaintiff's investment decision, any breach that may have occurred by failing to inform Plaintiff of BMI's selection did not result in damages to Plaintiff because the record evidence makes clear that Plaintiff invested with Altman and Harmony regardless of who they selected as a broker.  See pp. 7-9 of Defendants' Response [DE 87].

## 2.  Selection of BMI as Broker

Plaintiff contends that genuine issues of disputed material fact exist regarding Defendants' alleged breach of the PPM in the selection of BMI as broker.  Plaintiff asserts that there is no evidence that Defendants conducted any kind of search and just used BMI because of past dealings with Madoff.  However, Harold Altman testified that he did conduct such a search.  Deposition of Harold Altman at 20 [DE 61-1].   Thus, Plaintiff failed to properly support his assertion of a factual dispute under Fed. R. Civ. P. 56(e).  The Court notes that Defendants are correct that this action is not similar to those actions against Madoff feeder funds because Defendants clearly disclosed in the PPM that they were **not** fund managers, had no investment management experience, and were going to select a broker and turn over all investment decisions to the broker.

4

### 3.   Defendants' Alleged Failure to Meet Continuing Duties of PPM While Collecting the Incentive Fees

Plaintiff argues, for the first time, that Defendants' "willful ignorance" of the Madoff firm's success was a breach of their continuing duty regarding the retention of BMI as a broker trading the Partnership's account.  Plaintiff further contends that Defendants failed to earn their "Incentive Fees."  Plaintiff states that the uncontroverted record evidence reveals that Harold Altman did not receive securities research or stock analysis as mentioned in the PPM, yet continued to receive payment under the PPM for Madoff's phantom success.  Deposition of Harold Altman at 30 [DE 61-1].

Defendants respond to this argument by stating that the Complaint in this case did not allege "willful ignorance," but rather alleged breaches of the PPM and negligent misrepresentation.  Plaintiff asserts in its reply that the Complaint does allege that Defendants failed to research, investigate, or inquire of the Madoff firm as to the nature of the investments made on behalf of Harmony Partners.  Complaint ¶ 34.

As indicated in the prior subsection of this Order, Defendants correctly contend that this case is fundamentally different from the numerous actions against Madoff feeder funds, wherein class or derivative actions were filed against experienced and investor-savvy fund managers who ignored the red flags of the Madoff firm's unfailing success.  In the present case, the PPM upon which the alleged breaches are based made clear that Defendants had no investment management experience and would turn over all decisions to a broker who would have discretionary authority to invest all monies.  Plaintiff himself testified that he had no knowledge that any of the Defendants had any knowledge that Madoff was operating a Ponzi scheme.  Moreover, the PPM

allowed Defendants to collect a clearly disclosed incentive fee. Thus, there is no genuine issue of disputed material fact regarding Defendants' compliance with their duties in the PPM.

### D.  Economic Loss Rule

Plaintiff also seeks reconsideration of the Court's legal conclusion that his claims are barred by the economic loss doctrine.  In Florida, the economic loss rule represents the proposition that "[i]n the absence of personal injury or property damage, a party is generally not entitled to initiate an action in tort to recover an economic loss."  Sarkis v. Pafford Oil Co., Inc., 697 So. 2d 524, 527 (Fla. Dist. Ct. App. 1997) (citing Casa Clara Condo. Assoc., Inc. v. Charley Toppino & Sons, Inc., 620 So. 2d 1244 (Fla. 1993)). "This rule is based on the premise that parties to a contractual relationship have allocated their respective rights and remedies and consequently it is inappropriate to introduce tort remedies."  Id.

Plaintiff contends that the Florida Supreme Court has "reaffirmed the inapplicability of the economic loss rule to certain well-developed exceptions including professional malpractice, fraudulent inducement, and negligent misrepresentation." Plaintiff's Motion at 10.  Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 543 (Fla. 2004).  Of these, the only relevant cause of action is the one for negligent misrepresentation.  The decision in Indemnity merely cited to PK Ventures, Inc. v. Raymond James & Assocs., 690 So. 2d 1296, 1297 (Fla. 1997)[3] -- which in turn merely

---

[3]  The other cases cited by the Indemnity opinion, First Florida Bank, N.A. v. Max Mitchell & Co., 558 So. 2d 9 (Fla. 1990) (accountant professional liability), and First American Title Insurance Co. v. First Title Service Co., 457 So. 2d 467 (Fla. 1984) (title abstracter liability), do not address the economic loss rule in the same context as the

cited to HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1996), the case which created an exception for fraudulent inducement where the "negligent acts [are] considered to be independent from acts that breached the contract."  Plaintiff's other citations in his motion relate to New York law.

Thus, the key issue in applying the economic loss rule in Florida remains whether the alleged negligent misrepresentation is the same as the alleged breach of contractual obligations.  As it stated in its prior order, there is no evidence of any representations made outside of the contractual documents, nor any made to induce the making of the contract in this action.  Rather, the alleged misrepresentations are the same as the alleged breaches, and thus the claims are barred by the economic loss rule.

### III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Reconsideration [DE 73] is hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 14th day of March, 2011.

JAMES I. COHN
United States District Judge

copies to: Keith Grumer, Esq./Maidenly Macaluso, Esq.

Alan Lerner, Esq.

---

case at bar.